# FILED

JUN 1 7 2008 TC

**MICHAEL W. DOBBINS**
**CLERK, U.S. DISTRICT COURT**

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

GABRIEL OTHON
**Plaintiff(s)**

Case No. 08C 0878

**V.**

LG ELECTRONICS USA, INC.
**Defendant(s)**

## AMENDED COMPLAINT

1. THE DEFENDANT TERMINATED THE PLAINTIFF WRONGFULLY AFTER ESCALATING CONCERNS OF DISCREMINATION WERE VOICED BY THE PLAINTIFF. PLAINTIFF IS SEEKING MONETARY RELIEF FOR DAMAGES - PROFESSIONAL AND PERSONAL.

2. THE DEFENDANT EMPLOYED GROSS DISREGARD OF THE PLAINTIFF'S BUSINESS, TECHNICAL AND SOCIAL SKILLS IN DETERMINING HIS PATH IN THE COMPANY, INDICATIVE OF STRENUOUS RESERVATIONS NOT MENTIONED IN LIEU OF ABSENT PRESUMPTION CORRELATING AS PREDETERMINATION AND EXCLUSION, DIRECT SUPERVISION BEING EXECUTED BY A GENUINE TITLE VII HARDCASE.

3. THE DEFENDANT FAILED TO PROMOTE THE PLAINTIFF CITING A LACK OF EXPERTISE IN SEVERAL AREAS TECHNICAL WHICH HAVE FLOATED SINCE THE TIME OF DISCLOSURE IN FLAGRANT DISREGARD OF THE PLAINTIFF'S LISTED CERTIFICATES AND BACKGROUND PRESENT ON HIS RESUME, THE INCIDENT RESULTING IN TERMINATION IN FACT STEMMED FROM A DISCUSSION BECOMING HEATED OVER SUCH BUSINESS CONCERNS BUT BLOSSOMING INTO A PIOUS FRAUD, CITING AN ENTRENCHED COMMENT FOR A SUMMARY RESOLUTION, COLD.

GABRIEL J. OTHON
244 S MALE AV.
ADDISON, IL 60101
(630)832-7242

NORTHERN DISTRICT OF ILLINOIS
_____EASTERN_____ DIVISION

|  |  |  |
|---|---|---|
| GABRIEL OTHON | ) ) ) ) ) | |
| (Name of the plaintiff or plaintiffs) | ) | CIVIL ACTION |
| V. | ) ) ) | NO. 08C 0878 |
| LG ELECTRONICS USA, INC | ) ) ) ) ) | (Case number will be supplied by the assignment clerk) |
| (Name of the defendant or defendants) | ) ) | |

AMENDED    COMPLAINT OF EMPLOYMENT DISCRIMINATION

1. This is an action for employment discrimination.

2. The plaintiff is __GABRIEL OTHON_____ of
   the county of ____DUPAGE_____ in the state of __ILLINOIS_____.

3. The defendant is __LG ELECTRONICS USA, INC._____, who
   resides at (street address)__2000 MILLBROOK DR._____
   (city)__LINCOLNSHIRE__(county) __LAKE__ (state) __ILLINOIS__ (ZIP) __60069__
   (Defendant's telephone number) __(847)__ – __941-8000_____

4) The plaintiff sought employment or was employed by the defendant at

(street address) ___2000 MILLBROOK DRIVE___

(city)_LINCOLNSHIRE_ (county) _LAKE_ (state)_ILLINOIS_ (ZIP code)_60069_

5. The plaintiff [check one box]

(a)☐  was denied employment by the defendant.

(b)☐  was hired and is still employed by the defendant.

(c)☒  was employed but is no longer employed by the defendant.

6. The defendant discriminated against the plaintiff on or about, or beginning on or about,

(month)_FEBRUARY_, (day)_10_, (year)_2005_.

7. (a) The plaintiff [check one box] ☐ *has not* filed a charge or charges against the defendant
☒ *has*

asserting the acts of discrimination indicated in this complaint with any of the following

government agencies:

(i)    ☒ the United States Equal Employment Opportunity Commission on or about

(month)_OCTOBER_ (day)_10_ (year)_2006_.

(ii)    ☒ the Illinois Department of Human Rights on or about

(month)_OCTOBER_ (day)_10_ (year)_2006_.

(b)    If charges *were* filed with an agency indicated above, a copy of the charge is

attached.    ☒ YES ☐ NO

It is the policy of both the Equal Employment Opportunity Commission and the Illinois Department

of Human Rights to cross-file with the other agency all charges received. The plaintiff has no reason

to believe that this policy was not followed in this case.

8. (a)☐    the United States Equal Employment Opportunity Commission has not issued a

*Notice of Right to Sue*.

(b) ☒   the United States Equal Employment Opportunity Commission has issued a *Notice of Right to Sue*, which was received by the plaintiff on (month) JANUARY (day) 8 (year) 2008 a copy of which *Notice* is attached to this complaint.

9. The defendant discriminated against the plaintiff because of the plaintiff's [check all that apply]

(a) ☐   Age (Age Discrimination Employment Act).

(b) ☐   Color (Title VII of the Civil Rights Act of 1964 and 42 U.S.C. §1981).

(c) ☒   Disability (Americans with Disabilities Act)

(d) ☒   National Origin (Title VII of the Civil Rights Act of 1964 and 42 U.S.C. §1981).

(e) ☒   Race (Title VII of the Civil Rights Act of 1964 and 42 U.S.C. §1981).

(f) ☐   Religion (Title VII of the Civil Rights Act of 1964)

(g) ☒   Sex (Title VII of the Civil Rights Act of 1964)

10. The plaintiff is suing the defendant, a state or local government agency, for discrimination on the basis of race, color, or national origin (42 U.S.C. §1983).

☒ YES   ☐ NO

11. Jurisdiction over the statutory violation alleged is conferred as follows: over Title VII claims by 28 U.S.C.§1331, 28 U.S.C.§1343(a)(3), and 42 U.S.C.§2000e-5(f)(3); over 42 U.S.C.§1981 and §1983 by 42 U.S.C.§1988; over the A.D.E.A. by 42 U.S.C.§12117.

12. The defendant [check all that apply]

(a) ☐   failed to hire the plaintiff.

(b) ☒   terminated the plaintiff's employment.

(c) ☒   failed to promote the plaintiff.

(d) ☐   failed to reasonably accommodate the plaintiff's religion.

(e) ☐   failed to reasonably accommodate the plaintiff's disabilities.

(f) ☒    other (specify): FAILED TO ACCOMMODATE THE PLAINTIFF'S
PERFORMANCE

13. The facts supporting the plaintiff's claim of discrimination are as follows:

SEE ADDITIONAL PAGE

14. [AGE DISCRIMINATION ONLY] Defendant knowingly, intentionally, and willfully discriminated against the plaintiff.

15. The plaintiff demands that the case be tried by a jury.    ☐ YES    ☒ NO

16. THEREFORE, the plaintiff asks that the court grant the following relief to the plaintiff [check all that apply]

(a) ☐    Direct the defendant to hire the plaintiff.

(b) ☐    Direct the defendant to re-employ the plaintiff.

(c) ☐    Direct the defendant to promote the plaintiff.

(d) ☐    Find that the defendant failed to reasonably accommodate the plaintiff's religion.

(e) ☐    Find that the defendant failed to reasonably accommodate the plaintiff's disabilities.

(f) ☒    Direct the defendant to (specify): PAY $2,000,000 IN DEFERENCE TO THE
FOUR PARTS OF THE DISCRIMINATION OUTLINED IN ITEMS 8 AND 13 IN
REGARDS TO THE ACTIONS OUTLINED IN ITEMS 12 AND 13.

_____

_____

_____

_____

_____

(g) ☒    If available, grant the plaintiff appropriate injunctive relief, lost wages, liquidated/double damages, front pay, compensatory damages, punitive damages, prejudgment interest, post-judgment interest, and costs, including reasonable attorney fees and expert witness fees.

(h) ☒    Grant such other relief as the Court may find appropriate.

(Plaintiff's signature)    _Gabriel J. Oth_____

(Plaintiff's name)    _GABRIEL J. OTHON_____

(Plaintiff's street address)    _244 S. YALE AV_____

_____

(City)_ADDISON_    (State)_IL_    (ZIP)_60101_

(Plaintiff's telephone number) (_630_ ) – _832-7247_____

CHARGE OF DISCRIMINATION

ILLINOIS DEPARTMENT OF HUMAN RIGHTS
AND
EQUAL OPPORTUNITY COMMISSION

| CHARGE OF DISCRIMINATION | AGENCY | CHARGE NUMBER |
|---|---|---|
| This form is affected by the Privacy Act of 1974: See Privacy act statement before completing this form.<br>**07W1016.04** | ☒ IDHR<br><br>☐ EEOC | 2007CF1015 |

### Illinois Department of Human Rights and EEOC

| NAME (Indicate Mr. Ms. Mrs.)<br>**Gabriel J. Othon** | HOME TELEPHONE (Include area code)<br>**(630) 832-7247** |
|---|---|

| Street Address<br>**244 South Yale Avenue** | CITY, STATE AND ZIP CODE<br>**Addison, Illinois 60101** | DATE OF BIRTH<br>// |
|---|---|---|

NAMED IS THE EMPLOYER, LABOR ORGANIZATION, EMPLOYMENT AGENCY, APPRENTICESHIP COMMITTEE, STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME (IF MORE THAN ONE LIST BELOW)

| NAME<br>**LG Electronics, Inc.** | NUMBER OF EMPLOYEES,<br>MEMBERS 15+ | TELEPHONE (Include area code)<br>**(847) 941-8124** |
|---|---|---|

| STREET ADDRESS<br>**2000 Millbrook Drive** | CITY, STATE AND ZIP CODE<br>**Lincolnshire, Illinois 60069** | County<br>**Lake** |
|---|---|---|

| CAUSE OF DISCRIMINATION BASED ON:<br><br>**MENTAL HANDICAP** | DATE OF DISCRIMINATION<br>EARLIEST (ADEA/EPA) LATEST (ALL)<br>// 9/7/06<br>☐ CONTINUING ACTION |
|---|---|

THE PARTICULARS ARE (If additional space is needed attach extra sheets)

I.   A.   **ISSUE/BASIS**
  HARASSMENT – OCTOBER 2005, THROUGH SEPTEMBER 7, 2006, BECAUSE OF MY MENTAL HANDICAP, SCHIZOPHRENIA

  B.   **PRIMA FACIE ALLEGATIONS**

  1.  I am a handicapped individual as defined by the Illinois Human Rights Act.

  2.  Respondent was aware of my handicap status.

  3.  My job performance met Respondent's legitimate expectations. I was hired on June 1, 2005.

  4.  From about October 2005, through September 7, 2006, I have been harassed by co-workers.  The harassment consists being excluded from team functions and <u>social</u> <u>gatherings</u>.

  5.  Similarly situated non-handicap employees were not harassed.

**Continued...**

| I also want this charge filed with the EEOC. I will advise the agencies if I change my address or telephone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | SUBSCRIBED AND SWORN TO BEFORE ME ON THIS |
|---|---|
| | *[signature]* 10/16/06 |
| | NOTARY SIGNATURE            MONTH DATE-YEAR |
| "OFFICIAL SEAL"<br>Krystal I. Rogers<br>Notary Public, State of Illinois<br>My Commission Expires Nov. 15, 2006 | X *[signature]*          10/16/2006<br>SIGNATURE OF COMPLAINANT       DATE<br><br>I declare under penalty that the foregoing is true and correct I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief |

**NOTARY SEAL**

Complainant: **Gabriel J. Othon**
Charge Number: **2007CF1015**
Page 2

II.   A.   **ISSUE/BASIS**
           **FAILURE TO PROMOTE-- JULY 18, 2006, BECAUSE OF MY MENTAL**
           **HANDICAP, SCHIZOPHRENIA**

      B.   **PRIMA FACIE ALLEGATIONS**
           1.   I am a handicapped individual as defined by the Illinois Human Rights Act.

           2.   Respondent was aware of my handicap status.

           3.   Respondent had an opening for assistant product manager.

           4.   I applied and I am qualified for said opening.

           5.   On July 18, 2006, Respondent failed to promote me to said opening.  The
                reason given for the failure to promote was a lack of technical skills.

           6.   My handicap is unrelated to my ability to be promoted and perform the
                essential functions of the duties.

III.  A.   **ISSUE/BASIS**
           **DISCHARGE – SEPTEMBER 7, 2006, BECAUSE OF MY MENTAL**
           **HANDICAP, SCHIZOPHRENIA**

      B.   **PRIMA FACIE ALLEGATIONS**
           1.   I am a handicapped individual as defined by the Illinois Human Rights Act.

           2.   Respondent was aware of my handicap status.

           3.   My job performance met Respondent's legitimate expectations. I was hired on
                June 1, 2005.

           4.   On September 7, 2006, I was discharged.  The reason given for the discharge
                was for sexual harassment.

           5.   My handicap is unrelated to my ability to perform the essential functions of
                my duties.

**MFP/JJT/RCG**

**VERIFIED RESPONSE TO CHARGE**

**ILLINOIS DEPARTMENT OF HUMAN RIGHTS**

## STATE OF ILLINOIS
## DEPARTMENT OF HUMAN RIGHTS

GABRIEL J. OTHON,                    )
                                     )
          Complainant,               )
                                     )
     v.                              )     Charge No. 2007CF1015
                                     )
LG ELECTRONICS, INC.,                )
                                     )          DEPT. OF HUMAN RIGHTS
                                     )            SWITCHBOARD
                                     )
          Respondent.                )          DEC 2 9 2006

### VERIFIED RESPONSE TO CHARGE

Respondent, LG ELECTRONICS, INC., submits the following VERIFIED RESPONSE to the Charge of Discrimination of Complainant, GABRIEL J. OTHON.

### Paragraph I.A.

Harassment- October 2005, through September 7, 2006, because of my mental handicap, Schizophrenia

**RESPONSE:**     Respondent denies the allegations of Paragraph I.A.

### Paragraph I.B.1.

I am a handicapped individual as defined by the Illinois Human Rights Act.

**RESPONSE:**     Respondent lacks knowledge sufficient to form a belief about the allegations

of Paragraph I.B.1, so it denies same.

### Paragraph I.B.2.

Respondent was aware of my handicap status.

**RESPONSE:**     Respondent denies the allegations of Paragraph I.B.2.

### Paragraph I.B.3.

My job performance met Respondent's legitimate expectations. I was hired on June 1, 2005.

1

**RESPONSE:**          Respondent admits that Complainant was hired on or about June 1, 2005, but

denies the remaining allegations of Paragraph I.B.3.

### Paragraph I.B.4.

From about October 2005, through September 7, 2006, I have been
harassed by co-workers.    The harassment consists [sic] being
excluded from team functions and social gatherings.

**RESPONSE:**          Respondent denies the allegations of Paragraph I.B.4.

### Paragraph I.B.5.

Similarly situated non-handicap employees were not harassed.

**RESPONSE:**          Respondent admits the allegations of Paragraph I.B.5, and states that no

employees were harassed, including any employees who may be handicapped.

### Paragraph II.A.

Failure to promote- July 18, 2006, because of my mental handicap,
Schizophrenia

**RESPONSE:**          Respondent denies the allegations of Paragraph II.A.

### Paragraph II.B.1.

I am a handicapped individual as defined by the Illinois Human
Rights Act.

**RESPONSE:**          Respondent lacks knowledge sufficient to form a belief about the allegations

of Paragraph II.B.1, so it denies same.

### Paragraph II.B.2.

Respondent was aware of my handicap status.

**RESPONSE:**          Respondent denies the allegations of Paragraph II.B.2.

### Paragraph II.B.3.

Respondent had an opening for assistant product manager.

**RESPONSE:**          Respondent admits the allegations of Paragraph II.B.3.

-2-

### Paragraph II.B.4.

I applied and I am qualified for said opening.

**RESPONSE:**    Respondent admits that Complainant applied for said opening, but denies the

remaining allegations of Paragraph II.B.4.

### Paragraph II.B.5.

On July 18, 2006, Respondent failed to promote me to said opening.
The reason given for the failure to promote was a lack of technical
skills.

**RESPONSE:**    Respondent admits the allegations of Paragraph II.B.5, and states further that

a lack of technical skills was among the reasons for the decision not to promote Complainant.

### Paragraph II.B.6.

My handicap is unrelated to my ability to be promoted and perform
the essential functions of the duties.

**RESPONSE:**    Respondent lacks knowledge sufficient to form a belief about the allegations

of Paragraph II.B.6, so it denies same.

### Paragraph III.A.

Discharge- September 7, 2006, because of my mental handicap,
Schizophrenia

**RESPONSE:**    Respondent denies the allegations of Paragraph III.A.

### Paragraph III.B.1.

I am a handicapped individual as defined by the Illinois Human
Rights Act.

**RESPONSE:**    Respondent lacks knowledge sufficient to form a belief about the allegations

of Paragraph III.B.1, so it denies same.

### Paragraph III.B.2.

Respondent was aware of my handicap status.

**RESPONSE:**    Respondent denies the allegations of Paragraph III.B.2.

-3-

### Paragraph III.B.3.

My job performance met Respondent's legitimate expectations. I was hired on June 1, 2005.

**RESPONSE:**       Respondent admits that Complainant was hired on or about June 1, 2005, but

denies the remaining allegations of Paragraph III.B.3.

### Paragraph III.B.4.

On September 7, 2006, I was discharged. The reason given for the discharge was for sexual harassment.

**RESPONSE:**       Respondent admits the allegations of Paragraph III.B.4.

### Paragraph III.B.5.

My handicap is unrelated to my ability to perform the essential functions of my duties.

**RESPONSE:**       Respondent lacks knowledge sufficient to form a belief about the allegations

of Paragraph III.B.5, so it denies same.

WHEREFORE, Respondent requests that the above-captioned Charge be dismissed

in its entirety.

Respectfully submitted,

LG ELECTRONICS, INC.

By: _Tiana F. Nell_
One of Its Attorneys

Derek G. Barella
Tiana F. Nell
WINSTON & STRAWN LLP
35 West Wacker Drive
Chicago, Illinois 60601
Phone: (312) 558-5600
Fax:    (312) 558-5700

-4-

# INVESTIGATION REPORT

## ILLINOIS DEPARTMENT OF HUMAN RIGHTS

### STATE OF ILLINOIS
### DEPARTMENT OF HUMAN RIGHTS
### INVESTIGATION REPORT

**Complainant:** Gabriel J. Othon     **IDHR No:** 2007CF1015
**Respondent:** LG Electronics, Inc.   **EEOC:** 21BA70145

**Investigator:** **John Detwiler**   **Supervisor:** _____   **Date:** 07-30-07

| | | |
|---|---|---|
| **Issue/Basis:** | A. Harassment/mental handicap, schizophrenia | **Finding:** A. Lack of substantial evidence |
| | B. Failure to promote/mental handicap, schizophrenia | B. Lack of substantial evidence |
| | C. Discharge/mental handicap, schizophrenia | C. Lack of substantial evidence |

**Jurisdiction:**

Alleged violations:           Count A:  October 1, 2005, through September 7, 2006
                              Count B:  July 18, 2006
                              Count C:  September 7, 2006
Charged filed:                October 16, 2006
Charge Perfected:             October 16, 2006
Amendments:                   None
Number of employees:          88

**Verified Response**

Due:  December 29, 2006
Received:  December 29, 2006
Timely: _X_ Untimely: ___
If untimely, good cause shown: Yes: ___  No: __

**Employment Data:**

Respondent's EEO-1 Report (Exhibit A) indicated that they employ 88 employees. Complainant was the only Commercial Products Support Assistant.  Respondent does not track handicapped employees.

**Uncontested Facts:**

1. Respondent is a consumer products electronics company.
2. Complainant was a Commercial Products Support Assistant for Respondent
3. Complainant began working as a temp for Respondent in November 2004 and was hired to a full time position on June 1, 2005.
4. In July 2006, Complainant applied for an Assistant Product Manager position at Respondent.
5. The Assistant Product Manager position notice stated that the candidate should be fluent in Korean.
6. Complainant does not speak Korean.
7. Complainant was not promoted into the Assistant Product Manager position.

Charge No.: 2007CF1015
Page 2 of 11

8. In late August 2006, Complainant told his female supervisor that he was going to blackmail her for sex and they could have some good sex or a blowjob.

9. On September 7, 2006, Complainant accused his supervisor of having an affair with Respondent's Vice President Consumer Electronics Commercial Division.

10. Complainant was discharged on September 7, 2006, for the stated reason of sexual harassment.

## INVESTIGATIVE SUMMARY - COUNT A

### Complainant's Allegations

Complainant, a Commercial Products Support Assistant, alleged that from October 2005 until September 7, 2006, he was harassed by Respondent in that he was not invited to go on social events and team functions with co-workers. Complainant alleged that the harassment was based on his mental handicap, schizophrenia.

### Respondent's Defenses

Respondent denies that Complainant was harassed based on his mental handicap, schizophrenia. Rather, Respondent contends that the events Complainant alleges he was excluded from were not company-sponsored events but were personal gatherings by employees after work. Respondent contends that none of the events were company sponsored. Respondent stated that they have no control over employees' after hours social events.

### Factual Findings

1. The investigation revealed medical documentation for Complainant (Group Exhibit P). The documentation indicates that Complainant was diagnosed with chronic, paranoid type schizophrenia in March 2001. Based on the documentation, it appears that Complainant is handicapped as defined under the Illinois Human Rights Act.

**Staff note:**

Complainant's physician was sent a medial questionnaire on April 2, 2007. On April 6, 2007, the Department received Complainant's medical records but no questionnaire. The Department's staff contacted Complainant's medical provider, who indicated that Complainant's physician no longer worked there and they had no forwarding information. Complainant's medical provider stated that they were unable to complete the questionnaire. The documentation received by the Department on April 6, 2007, indicated Complainant's condition and date of diagnosis.

2. The investigation revealed Respondent's Equal Opportunity Employment Policy (Exhibit B), which indicates that Respondent will not discriminate on the basis of race, color, religion, sex, sexual orientation, national origin, age, disability, marital status, veteran status, hereditary cellular of blood trait, or any other basis prohibited under applicable federal, state, or local law. The policy indicates that the policy applies to all areas of employment.

3. The investigation revealed Respondent's Harassment Policy (Exhibit C), which indicates that harassment based on disability is prohibited. The policy indicates that anyone who believes that they have been treated in a discriminatory manner should report the action to a supervisor or the Head of Human Resources.

4. Tammi Hansen (non-handicapped), Commercial Products Support Manager, stated that around October 1, 2005, Complainant mentioned to her that he had schizophrenia but she didn't think anything of it. Hansen stated that the sales staff would sometimes go out after work but she was not invited either. Hansen stated that as far as she knew Complainant went to more social events than she did. Hansen stated that Complainant did mention to her one time after October 1, 2005, that he felt excluded on one occasion because a number of the women at Respondent went out on one occasion and he was not invited. Hansen stated that it was not a work related function, just some people going out after work.  *MEN LUNCH GRIEVANCE?*

5. Complainant stated that he informed his manager, Tammy Hanson, of his metal handicap, schizophrenia, in October 2005. Complainant stated that Linda Walsh also knew about his schizophrenia because he had discussed a criminal charge he had on his record before he was hired into his position. Complainant stated that he began working at Respondent in November 2004 as a temp but was hired by Respondent full time on June 1, 2005. Complainant stated that from October 1, 2005, until September 7, 2006, he was harassed in that he was excluded from team functions and social gatherings. Complainant stated that the team functions and social gatherings consisted of sales team members and other staff going out socially after work. Complainant stated that he tagged along once or twice in early October 2005 but was never invited so he stopped going. Complainant stated that occasionally a group of sales employees would often go out after work but again he was never invited. *MEN LUNCH GRIEVANCE?*

Complainant stated that the reason he was not invited out after work was because Respondent knew he had schizophrenia.  *+ AVASLAJLO (IMPLICIT?)*

**Staff note**

Respondent was requested to submit documentation for all employees at Respondent who reported harassment during the period September 7, 2004, through September 7, 2006. Respondent stated through Counsel that other than complaints of sexual harassment filed against Complainant, there were none.

**Analysis**

*LUNCH GRIEVANCE*

The investigation revealed that Complainant is handicapped according to the Illinois Human Rights Act. However, there is no evidence that Complainant was harassed based on his mental handicap schizophrenia. Complainant's allegations that he was excluded from social gatherings and team functions do not rise to the level of harassment. Complainant's own testimony indicates that the social gatherings and team functions were not sponsored by Respondent. Complainant's allegations do not include comments or action related to his mental handicap schizophrenia.

**Findings and Conclusion:** A finding of **LACK OF SUBSTANTIAL EVIDENCE** is recommended because:

*LUNCH*

The investigation revealed that Complainant is handicapped according to the Illinois Human Rights Act. However, Complainant's allegations that he was excluded from social gatherings and team functions do not rise to the level of harassment. Complainant's own testimony indicates that the social gatherings and team functions were not sponsored by Respondent. Complainant's allegations do not include comments or action related to his mental handicap schizophrenia.

## INVESTIGATIVE SUMMARY – COUNT B

### Complainant's Allegations

Complainant, a Commercial Products Support Assistant, alleged that on July 18, 2006, Respondent failed to promote him to the position of Assistant Product Manager because of his mental handicap, schizophrenia. Complainant stated that he was qualified for and had applied for the position.

### Respondent's Defenses

Respondent denies it failed to promote Complainant because of his mental handicap, schizophrenia. Rather, Respondent contends that the person hired for the position was more qualified than Complainant. *fasld to recognise develoment orissional concerns*

### Factual Findings

1. The investigation revealed the job description for Commercial Product Support Assistant (Exhibit D). The description indicates that Complainant's responsibilities included initiating and processing product return authorizations, working with Respondent's Service Division, and providing customer support.

2. The investigation revealed an Internal Job Request Form for Complainant, dated March 27, 2006 (Exhibit E), in which Complainant expresses an interest in a promotion to Assistant Product Manager. The Internal Job Request Form includes Respondent's promotions policy, which indicates that in order to be eligible for a promotion, the employee must have at least twelve months service in their current position and must have no written discipline within the prior twelve-month period.

3. The investigation revealed Complainant's personnel file (Group Exhibit F). The personnel file does not include any written discipline for the period March 27, 2004 through March 27, 2005.

4. Linda Walsh (handicapped), Human Resources Manager, stated that the position notice for the Assistant Product Manager position stated that being fluent in Korean was preferred. Walsh stated that Complainant did not speak Korean. *spanish - ati-isa*

5. The investigation revealed the Job Description for Assistant Product Manager (Exhibit G), The Job Description indicates that the responsibilities of the position include developing new component business in the United States and Mexico, communicating with customers, maintaining constant communication with Respondent's Korean facilities for shipment and other issues. The Job Description indicates that a Bachelors degree in Computer Science is required and it is preferable that the candidate be fluent in Korean. *Chuba cs popular candidate*

6. Walsh stated that the person who was given the position, Min Choi, was Korean and fluent in the language.

7. The investigation revealed the employment application and resume of Min Choi (Exhibit H), which indicates that Choi does not have a Bachelor's of Computer Science and has

previously employed as an Air Export Specialist and a General Administrator. Choi's resume indicates that he speaks Korean.

8. The investigation revealed the employment application and resume of Complainant (Exhibit I), which indicates that Complainant does not have a Bachelor's of Computer Science and has employed by Respondent in an Assistant Product Support position. The documentation indicates that Complainant was previously employed in administration and sales. Complainant's resume does not indicate that he speaks Korean. *SPANSIN/CHUSS*

9. Linda Walsh stated that besides Complainant and Choi, three other people applied for the Assistant Product Manager position. Walsh stated that she is not aware that any of the applicants had a handicap. *FULL AGREEMENT*

10. The investigation revealed application documentation for all applicants other than Complainant who were not hired into the Assistant Product Manager position (Group Exhibit J). The documentation indicates that two of the applicants were current employees of Respondent. The documentation indicates that one of the applicants who did not get the Associate Manager position speaks Korean.

11. Walsh stated that Complainant came to her after he was told that he did not get the position and asked why. Walsh stated that she told him that she tried to explain to him but he became argumentative and she ended the meeting. *CALLED ADDRESS, REASON WORKED WITH PRODUCT MANAGERS TO ANSWER QUESTION*

12. Tammy Hansen, Commercial Products Support Manager, stated that Complainant asked her if he could apply for the Assistant Product Manager position and she said it was ok except that she didn't think he had the necessary technical skills and he didn't speak Korean. Hansen stated that when Complainant was told he wouldn't get the position he became very upset and went to Linda Walsh and tried to appeal. Hansen stated that she has no knowledge of how the decision process was carried out. *SPOKE AGAINST CONVERSATION ... WAS*

13. Complainant stated that in July 2006, he saw an email notice about a position for Assistant Product Manager. Complainant stated that he applied for the position and was well qualified for the position. Complainant stated that the position notice stated that the Assistant Product Manager should speak Korean but he does not speak Korean. Complainant stated that the Korean language requirement is not necessary because Respondent has factories in Mexico and he is fluent in Spanish. Complainant stated that the person who got the job is Korean. Complainant stated that after he did not get the position, he asked Linda Walsh why he was not promoted. Complainant stated that Walsh told him that he did not have the technical skills. Complainant stated that he tried to explain to her that father worked in the electronics industry and he grew up around electronic equipment and he has very string technical skills but she did not want to listen. Complainant stated that he does not know the technical skills of the person hired. Complainant stated that he was not given a chance with the position because Respondent knew of his schizophrenia.

14. The investigation revealed documentation for all Associate Managers hired during the period June 18, 2004, through June 18, 2006 (Exhibit K) The documentation indicates that one person, Rae Seo Lee, was hired on September 14, 2005. The documentation indicates

that Rae Seo Lee is fluent in Korean. Linda Walsh indicated that Lee did not report having a handicap.

## Analysis

The investigation revealed that Complainant is handicapped according to the Illinois Human Rights Act. However, the Department's investigation did not reveal that Respondent failed to promote Complainant based on his metal handicap, schizophrenia. Rather the investigation revealed that Respondent failed to promote Complainant because he was not the most qualified for the position. Documented evidence indicates that Respondent was looking for an Assistant Product Manager who was fluent in Korean. The prior Assistant Product Manager was fluent in Korean and the candidate who was hired into the position was also fluent in Korean. Complainant's own testimony indicates that he was aware of the language requirement when he applied for the position. Complainant did not identify, and the Department's investigation did not reveal, any evidence that he was more qualified for the Assistant Product Manager position that the individual who was hired.

**Findings and Conclusion:** A finding of **LACK OF SUBSTANTIAL EVIDENCE** is recommended because:

The investigation revealed that Complainant is handicapped according to the Illinois Human Rights Act. However, the investigation revealed that Respondent failed to promote Complainant because he was not the most qualified for the position. Documented evidence indicates that Respondent was looking for an Assistant Product Manager who was fluent in Korean. The prior Assistant Product Manager was fluent in Korean and the candidate who was hired into the position was also fluent in Korean. Complainant's own testimony indicates that he was aware of the language requirement when he applied for the position. Complainant did not identify, and the Department's investigation did not reveal, any evidence that he was more qualified for the Assistant Product Manager position that the individual who was hired.

## INVESTIGATIVE SUMMARY – COUNT C

### Complainant's Allegations

Complainant, a Commercial Products Support Assistant, alleged that on September 7, 2006, Respondent discharged him because of his mental handicap, schizophrenia.

### Respondent's Defenses

Respondent denies it discharged Complainant because of his mental handicap, schizophrenia. Rather, Respondent contends that Complainant was discharged for sexual harassment against his supervisor.

### Factual Findings

1. The investigation revealed Respondent's sexual harassment policy (Exhibit C) which indicates that Respondent prohibits sexually oriented or offensive remarks, including oral references to sexual conduct, sexually oriented comments, or questions about another's sex life or experiences. The policy indicates that if an employee has harassed another individual, it will impose appropriate discipline.

2. The investigation revealed Complainant's personnel file (Group Exhibit F), which does not contain any prior discipline.

3. Linda Walsh, Human Resources Manager, stated that on September 7, 2006, she was told by Tammi Hansen, Commercial Products Support Manager, that Complainant had accused her and her boss of having an affair. Walsh stated that Hansen then said that Complainant had told her on August 24, 2005, that he was going to blackmail her for sex and said they could have some great sex or a blowjob. Walsh stated that she asked Hansen why she didn't report it previously and Hansen stated because she felt it would get Complainant fired and she didn't want that to happen.

4. Walsh stated that after the met with Hansen she went to Sang Chi (non-handicapped), Director of Administration and Fiscal Management, and then called Gary Bonomolo, (non-handicapped), Director of Human Resources, about the proper course of action to take. Walsh stated that she was told by Bonomolo to ask Complainant what was said and if he admitted to the comments he would be discharged, otherwise he would receive a written warning. Walsh stated that she met with Complainant on the afternoon of September 7, 2006, and he admitted making the statements. Walsh stated that she asked Complainant if he had attended Respondent's sexual harassment training and Complainant stated that he had. Walsh stated that Complainant was then discharged for sexual harassment.

5. The investigation revealed investigation notes from Walsh dated September 7, 2006 (Exhibit L), which indicates that after Walsh interviewed Tammi Hansen regarding the allegations of sexual harassment against Complainant she consulted with Respondent's Director of Human Resources to determine a proper course of action. The notes stated that Walsh was told that if Complainant denied making the statements, he should be issued a written warning but if Complainant admitted making the statements, he should be discharged. The notes indicate that Walsh interviewed Complainant, who admitted making the statements. The notes indicate that Walsh informed Complainant he was discharged, to which Complainant replied he was getting an attorney because he was being fired because of his schizophrenia.

6. The investigation revealed a Human Resources Action Form dated September 7, 2006 (Exhibit M), which indicates that Complainant was discharged for gross misconduct on September 7, 2006.

7. Gary Bonomolo (non-handicapped) stated that he was the former Director of Human Resources and worked at Respondent's headquarters in New Jersey. Bonomolo stated that on September 6, 2006, he was contacted by Linda Walsh and asked for advise about a situation involving Complainant and his supervisor. Bonomolo stated that Walsh told him that Complainant's supervisor had made allegations that Complainant had asked her for sex. Bonomolo stated that Respondent has a strict sexual harassment policy and the situation as described by Walsh appeared to be a quid pro quo request from a subordinate to a supervisor.

Bonomolo stated that he told Walsh to get a statement from Complainant responding to the allegations. Bonomolo stated that he told Walsh to have a witness present and ask Complainant directly if he had made the statements to his supervisor. Bonomolo stated that he told Walsh if Complainant admitted to making the statements, that would be a gross violation of Respondent's sexual harassment policy and grounds for immediate discharge. Bonomolo

stated that he had no further direct involvement but was later told by Walsh that Complainant had admitted to making the statements and was discharged.

Bonomolo stated that he had no knowledge of Complainant's mental handicap.

8.  Tammi Hansen stated that on August 24, 2005, Complainant was upset that he wasn't being brought on a sales trip and told her that he should blackmail her for sex and they could have some great sex or a blowjob. Hansen stated that she was shocked to hear Complainant say that because she never expected it from him. Hansen stated that she should have reported it immediately but did not because she did not want to see Complainant get in trouble. *NATURALLY*

Hansen stated that on September 7, 2006, she was outside having a cigarette with Complainant when he told her that he felt that she was keeping him in the dark. Hansen stated that she asked him what he meant by that and he mentioned not being invited on the sales trip and asked her if she and Ron Snaidoff were having an affair. Hansen stated that she went and told Snaidoff about what was said and he told her to go talk to Linda Walsh. Hansen stated that she spoke with Walsh and told her what Complainant had said and told her about the comments Complainant made on August 24, 2006.

9.  Chris Flink (non-handicapped) stated that he is the Building Manager. Flink stated that he did not witness Complainant making any statements to Tammi Hansen but was asked by Linda Walsh to sit in as a witness on a meeting between her and Complainant. Flink stated that Walsh asked Complainant if he had made a statement about Hansen and Ron Snaidoff having an affair. Flink stated that Complainant told her that he did make the statement because he thought that they were having an affair. Flink stated that Walsh then asked Complainant if he had told Hansen that they should have some great sex or a blowjob. Flink stated that Complainant admitted making that statement also.

Flink stated that Walsh told Complainant that he was being terminated for sexual harassment, to which Complainant replied that he had schizophrenia and would get a lawyer. Flink stated that this was the first he had ever heard about Complaint having a mental handicap.

Flink stated that he and Walsh escorted Complainant to his desk to collect his belongings and then Complainant left. Flink stated that later that afternoon Complainant called him and said that he had left a notebook behind. Flink stated that he found the notebook and had it sent back to Complainant. *J*

*GOOD WORK*

10. Complainant stated that on September 7, 2006, he was told by Hansen that she was going on a business trip. Complainant stated that he should have also gone on the trip but was not invited. Complainant stated that he met with Hansen later that day and told her that he has been sitting at a desk since he has been working at Respondent and felt that his career wasn't going anywhere. Complainant stated that Hansen told him that's the way it works. Complainant stated that he told her that's not the way it works at other companies. Complainant stated that Hansen and her boss, Ron Snaidoff, seem like they are best buddies so he asked Hansen if she and Snaidoff were having an affair. Complainant stated that once he said that Hansen seemed to get upset and left. Complainant stated that an hour or so later he was called into a meeting with Linda Walsh. Complainant stated that Chris Flink (non-handicapped), Building Manager, was present as a witness.

Complainant stated that Walsh told him that that Hansen had told her that he had asked if she and Ron Snaidoff were having an affair and then asked him if he had said it. Complainant stated that he told her that he had. Complainant stated that Walsh then asked him if he had told Hansen on August 24, 2006, that he was going to blackmail her for sex and they could have some good sex or a blowjob. Complainant stated that he did tell her that but she did not seem to be upset and in fact after he said it Hansen would exchange looks with him and he felt that their relationship was improving. Complainant stated that Walsh then told him he was being discharged.

11. The investigation revealed documentation for all employees at Respondent who were disciplined but not discharged for sexual harassment during the period September 7, 2004, through September 7, 2006 (Exhibit N). The documentation indicates that one employee, Juergen Wieldel, was issued a verbal warning on May 8, 2006, for an inappropriate image that Wiedel placed on his cubicle wall. Respondent indicates through Counsel that Wiedel does not have a reported handicap.

12. Ron Snaidoff (non-handicapped), Vice President/General Manager of LG Commercial Business Unit, stated that on September 7, 2006, he spoke with Tammi Hansen, who was extremely upset about some comments made to her by Complainant. Snaidoff stated that Hansen told him that Complainant was saying that she and Sniadoff were having an affair. Snaidoff stated that he was furious at this and contacted Linda Walsh, telling her that he wanted Complainant fired. Snaidoff stated that Walsh told him to stand down and that she would investigate. Snaidoff stated that Walsh met with Complainant, along with the Building Manager, Chris Flink, who was present as a witness.

Snaidoff stated that he was not present at the meeting but was later told that Complainant admitted making the statements and was discharged. Snaidoff stated that he had no knowledge that Complainant was handicapped.

13. Sang Chi (non-handicapped), Director of Administration and Fiscal Management, stated that on September 7, 2006, he was informed by Linda Walsh that Complainant had made some sexually inappropriate statements to Tammi Hansen. Chi stated that he told Walsh to find out the circumstances and then he and Walsh called Gary Bonomolo, Director of Human Resources at Respondent's New Jersey office to determine how to, proceed. Chi stated that Bonomolo stated that if Complainant admitted making the statements, he should be discharged, otherwise, Complainant would receive a written warning. Chi stated that he had no knowledge of Complainant's handicap.

Chi stated that he had no more involvement in the matter but was later told by Walsh that Complainant had admitted making the statements and was then discharged.

14. The investigation revealed documentation for all employees discharged during the period September 7, 2004, through September 7, 2006 (Exhibit O). Then documentation indicates that one employee, Todd Moffett, was discharged on December 2, 2005, for performance reasons. Respondent indicates through Counsel that Moffett does not have a reported handicap.

Charge No.: 2007CF1015
Page 10 of 11

**Staff note:**

Respondent was requested to submit documentation for all employees, other than Complainant, who were discharged for sexual harassment at Respondent during the period September 7, 2004, through September 7, 2006. Linda Walsh stated that other than Complainant, there were none.

**Analysis**

The investigation revealed that Complainant is handicapped according to the Illinois Human Rights Act. However, the Department's investigation did not reveal that Complainant was discharged based on his metal handicap, schizophrenia. Rather Complainant was discharged for sexual harassment against a supervisor. Respondent's sexual harassment policy prohibits sexually oriented or offensive remarks Complainant's own testimony indicates that he engaged in the conduct, which resulted in his discharge. Complainant did not indicate, and the Department's investigation did not reveal, any other employee at respondent who engaged in the same conduct as Complainant but was not discharged. There is no evidence to indicate that Complainant was discharged based on his mental handicap, schizophrenia. ≠ *[handwritten]*

**Findings and Conclusion:** A finding of **LACK OF SUBSTANTIAL EVIDENCE** is recommended because:

The investigation revealed that Complainant is handicapped according to the Illinois Human Rights Act. However, Complainant was discharged for sexual harassment against a supervisor. Complainant's own testimony indicates that he engaged in the conduct, which resulted in his termination. Complainant did not indicate, and the Department's investigation did not reveal, any other employee at respondent who engaged in the same conduct as Complainant but was not discharged. There is no evidence to indicate that Complainant was discharged based on his mental handicap, schizophrenia. *[handwritten] opposed unmentioned exposed report violated*

**Witness Information**

1. Complainant (FFC)
   244 S. Yale Ave.
   Addison, IL 60101
   630-832-7247

2. Linda Walsh (handicapped), Human Resources Manager (FFC)
   C/o Tiana F. Nell
   Winston & Strawn, LLC
   35 W. Wacker Dr.
   Chicago, IL 60601
   312-558-5600

3. Tammy Hansen (non-handicapped), Commercial Products Support Manager (FFC)
   C/o Tiana F. Nell
   (see above)

*[handwritten, right margin]: for notarized for refusal to investigate race charge, also of note is mail lunch grievance assessed, + other omissions plus age discrimination force*

Charge No.: 2007CF1015
Page 11 of 11

4. Sang Chi (non-handicapped), Director of Administration and Fiscal Management (telephone interview)
   C/o Tiana F. Nell
   (see above)

5. Gary Bonomolo (non-handicapped), former Director of Human Resources (telephone interview)
   C/o Tiana F. Nell
   (see above)

6. Chris Flink (non-handicapped), Building Manager (telephone interview)
   C/o Tiana F. Nell
   (see above)

7. Ron Snaidoff (non-handicapped) Vice President/General Manager of LG Commercial Business Unit
   C/o Tiana F. Nell
   (see above)

## List of Exhibits

A. EEO-4 Report.
B. Respondent's Equal Employment Opportunity Policy.
C. Respondent's Harassment Policy
D. Job description for Commercial Product Support Assistant.
E. Internal Job Request Form for Complainant, dated March 27, 2006
F. Complainant's personnel file
G. Job Description for Assistant Product Manager.
H. Employment application and resume of Min Choi.
I. Employment application and resume of Complainant.
J. Application documentation for all applicants other than Complainant who were not hired into the Assistant Product Manager position.
K. Documentation for all Associate Managers hired during the period June 18, 2004, through June 18, 2006.
L. Investigation notes from Linda Walsh dated September 7, 2006.
M. Human Resources Action Form dated September 7, 2006.
N. Documentation for all employees at Respondent who were disciplined but not discharged for sexual harassment during the period September 7, 2004, through September 7, 2006.
O. Documentation for all employees at Respondent discharged during the period September 7, 2004, through September 7, 2006.
P. Medical documentation for Complainant

## VERIFICATION

### LINDA WALSH

### APPEARANCE NOTIFICATIONS

**DEREK BARELLA – WINSTON & STRAWN LLP**
**TIANA F. NELL – WINSTON & STRAWN LLP**

## **VERIFICATION**

I, Linda J. Walsh, first being duly sworn, depose and state that I am a Human Resources Manager for Respondent, LG Electronics, Inc., that I am authorized to respond to Complainant's Charge of Discrimination, and that the statements contained within the foregoing Verified Response to Charge are true and correct to the best of my knowledge, information and belief.

_____
Linda J. Walsh


SUBSCRIBED AND SWORN TO before me
this 31 day of December

_____
Notary Public

My Commission Expires: 9-21-08

```
OFFICIAL SEAL
SHARON KROLL
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES:09/21/08
```

## CERTIFICATE OF SERVICE

I, Tiana F. Nell, one of the attorneys for Respondent, LG Electronics, Inc., certify that a true and correct copy of the foregoing Verified Response was served upon the following party by depositing a copy of same in the regular U.S. Mail, postage prepaid, at 35 W. Wacker Drive, Chicago, Illinois, on this 29th day of December, 2006.

Mr. Gabriel J. Othon
244 South Yale Avenue
Addison, Illinois 60101

Tiana F. Nell

CHI:1827093.1

## STATE OF ILLINOIS
## DEPARTMENT OF HUMAN RIGHTS

GABRIEL J. OTHON,                    )
                                     )
                    Complainant,     )
                                     )
        v.                           )       Charge No. 2007CF1015
                                     )
LG ELECTRONICS, INC.,                )
                                     )
                                     )       DEPT. OF HUMAN RIGHTS
                                     )          SWITCHBOARD
                    Respondent.      )       DEC 2 9 2006

## APPEARANCE

Winston & Strawn LLP, by Derek G. Barella and Tiana F. Nell, hereby enters the appearance of LG ELECTRONICS, INC., and our Appearance as its attorneys, and requests that copies of all Pleadings, Orders, and other documents be served upon the undersigned for said Party in lieu of service upon the Party.

LG ELECTRONICS, INC.

Date: December 29, 2006                 By: _Tiana F. Nell_____
                                            Tiana F. Nell

Derek G. Barella
Tiana F. Nell
Winston & Strawn LLP
35 W. Wacker Drive
Chicago, IL 60601-9703
Tel: 312-558-5600
Fax: 312-558-5700

## CERTIFICATE OF SERVICE

I, Tiana F. Nell, one of the attorneys for Respondent, LG Electronics, Inc., certify that a true and correct copy of the foregoing Appearance was served upon the following party by depositing a copy of same in the regular U.S. Mail, postage prepaid, at 35 W. Wacker Drive, Chicago, Illinois, on this 29th day of December, 2006.

Mr. Gabriel J. Othon
244 South Yale Avenue
Addison, Illinois 60101


_____
Tiana F. Nell

**NOTICE OF DISMISSAL**

**ILLINOIS DEPARTMENT OF HUMAN RIGHTS**

**DISMISSAL AND NOTICE OF RIGHTS**

**EQUAL OPPORTUNITY COMMISSION**

STATE OF ILLINOIS
DEPARTMENT OF HUMAN RIGHTS

IN THE MATTER OF:                          )
                                           )
GABRIEL J. OTHON,                          )         CHARGE NO.  2007CF1015
                                           )         EEOC NO.    21BA70145
                        COMPLAINANT,       )
                                           )
AND                                        )
                                           )
L G ELECTRONICS, INC.,                     )
                                           )
                        RESPONDENT.        )

## NOTICE OF DISMISSAL
## FOR LACK OF SUBSTANTIAL EVIDENCE

Mr. Gabriel J. Othon              Ms. Tiana F. Nell, Esq.
244 South Yale Avenue            Winston & Strawn, LLP
Addison,  IL  60101              Attorneys at Law
                                 35 West Wacker Drive,  Suite 4200
                                 Chicago,  IL  60601

DATE:  August 1, 2007

REQUEST FOR REVIEW FILING DEADLINE DATE:   September 5, 2007

1.      YOU ARE HEREBY NOTIFIED that based upon the enclosed investigation
report, the DEPARTMENT OF HUMAN RIGHTS (DHR) has determined that there is
NOT substantial evidence to support the allegations of the charge(s).  Accordingly,
pursuant to Section 7A-102(D) of the Human Rights Act (775 ILCS 5/1-101 et. seq.)
and its Rules and Regulations (56 Ill. Adm. Code. Chapter II, Section 2520.810), the
charge is HEREBY DISMISSED.

2.      If Complainant disagrees with this action, Complainant may seek review of this
dismissal before the CHIEF LEGAL COUNSEL (CLC), Illinois Department of Human
Rights, 100 West Randolph Street, Suite 10-100, Chicago, Illinois, 60601, by filing a
"Request for Review" with the CLC within thirty (30) days after receipt of this Notice, by
the request for review filing date above.  Respondent will be notified by the CLC if a
Request for Review is filed.

(continued on page two)

**NOTICE OF DISMISSAL FOR LACK OF SUBSTANTIAL EVIDENCE**
August 1, 2007
Page Two

3.    If an EEOC charge number is cited above, this charge was also filed with the Equal Employment Opportunity Commission (EEOC).  If this charge alleges a violation under Title VII of the Civil Rights Act of 1964, as amended, or the Age Discrimination in Employment Act of 1967, Complainant has the right to request EEOC to perform a Substantial Weight Review of this dismissal.   (Charges filed under the Americans with Disabilities Act of 1990 are automatically given this review.)  Please note that in order to receive such a review, it must be requested in writing to EEOC within fifteen (15) days of the receipt of this notice, or if a request for review is filed with the Chief Legal Counsel, within fifteen days of the Chief Legal Counsel's final order.  Any request filed prior to your receipt of a final notice WILL NOT BE HONORED.  Send your request for a Substantial Weight Review to EEOC, 500 West Madison Street, Suite 2800, Chicago, Illinois  60661.  Otherwise, EEOC will generally adopt the Department of Human Rights' action in this case.

PLEASE NOTE:  BUILDING SECURITY PROCEDURES PRESENTLY IN PLACE DO NOT PERMIT ACCESS TO EEOC WITHOUT AN APPOINTMENT.  IF AN APPPOINTMENT IS REQUIRED, CALL 312-353-2713 OR 1-800-669-4000.

                              DEPARTMENT OF HUMAN RIGHTS

NOD/LSE
12/01

EEOC Form 161 (3/98)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## DISMISSAL AND NOTICE OF RIGHTS

| To: | Mr. Gabriel J. Othon<br>244 South Yale Avenue<br>Addison, IL 60101 | From: | Equal Employment Opportunity Commission<br>Chicago District Office<br>500 West Madison Street<br>Suite 2800<br>Chicago, Illinois 60661-2511 |

☐   On behalf of person(s) aggrieved whose identity is
*CONFIDENTIAL (29 CFR § 1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 21BA70145 | Nola Smith, State & Local Coordinator | (312) 886-5973 |

THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

☐   The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

☐   Your allegations did not involve a disability as defined by the Americans with Disabilities Act.

☐   The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

☐   Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge.

☐   Having been given 30 days in which to respond, you failed to provide information, failed to appear or be available for interviews/conferences, or otherwise failed to cooperate to the extent that it was not possible to resolve your charge.

☐   While reasonable efforts were made to locate you, we were not able to do so.

☐   You were given 30 days to accept a reasonable settlement offer that affords full relief for the harm you alleged.

☐   The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

☒   The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

☐   Other *(briefly state)*

### - NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, and/or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS of your receipt of this Notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a state claim may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years)** before you file suit may not be collectible.

On behalf of the Commission

*John P. Rowe*
_____
**John P. Rowe, District Director**

JAN 0 9 2007

*(Date Mailed)*

Enclosure(s)

cc:   **L G ELECTRONICS, INC.**

**ITEM 13 CONTINUATION**

Item 13 Continuation

This statement is regards to EEOC: 21BA70145 concerning Gabriel J. Othon v LG Electronics. A case in which I have notified the FBI but not yet received a response advising of foul play involving John Detwiler the investigator who submitted the findings woefully incomplete, turning what should be a simple march into an extravagant waltz. He did request a 120 day extension which I refused on grounds of ironclad testimony which has been disregarded in the findings as well as a sense of bureaucracy looming over such a request which did not even include a race charge as the investigator, rejected by the clerk who took my initial statement as well which would have immediately led to the Polish-Italian synergy shared by my immediate superiors solidifying the rest of my case even further beyond the mere Mexican discrimination charge.

Firstly, LG Electronics has facilities in Mexico requiring Spanish speaking skills which the hired individual does not have but I do.

Secondly, the language presents my sexual comments to a rather trashy person as menacing and malicious after personally interviewing both of us, blatantly presuming me dim and uncouth.

Third in order, but first in grievances was the social exclusion charge which hinged on Ron Snaidauf's lunch club habits personally inviting companions down to the temp level none of which ever included an invitation to me nor was it included anywhere in the entire 11 page State of Illinois Department of Human Rights Investigation Report. Also not included was Tammy Hansen's prodding me to take quiet lunches or an arrangement made granting me slack arriving in the morning, but had to be discontinued because out of department grumbling.

Further, a two person department in a loose division building was deeming it necessary for her to facilitate opportunities for interaction to which she only drew more closed in general. Even leaving me bowling with the odd ends team on the employee bowling night. The random evenings that were mentioned in the report were never really part of the charges, however, the regular Monday night sales outing at Carlucci's on the other side of the business park that I happened to stumble and find out upon months after beginning employment under Tammy Hansen, even though the other employees generally considered it open invitation and closed doors, was also not mentioned. Additionally, though the LG Electronics Commercial Trade Manager Pam Rembowicz was free with supplier trinkets and LG novelties, LG Electronics policy restrained her from sharing corporate wear. Similarly, Diane Hupert, the division administrative assistant advised me not even business cards were afforded employees at my level. Neither Pam or Diane were interviewed.

Fourth any mention of computer sciences in the technical skill requirements is completely false. When inquired Bruce Mess man - not interviewed advised me of video wiring requirements for trade shows and was satisfied when I responded in turn with my electronic technician surroundings that I was raised by my father who did work for Zenith Electronics years before LG Electronics ever acquired them. To go on, had they inquired, I would have directed them to review the education section of my resume which included a Top Gun Client Server Certificate from Chubb Computer Services.

Fifth, Linda Walsh perjured herself testifying I was argumentative when I presented explicit facts in the assistant product manager position decision. Not mentioned is her failure to remember indications of discrimination that were relayed to her and the product management team in my department within their division at a review I asked Linda to convene on my behalf.

Sixth, as far as I know a full Product Management Team includes 4 Product Managers and 2 Assistant Product Managers of which they had gone from 3 Product Managers and 0 Assistant Product Managers to 2 Product Managers and 1 Assistant Product Manager leaving me to infer reservations beyond any mentioned though my performance was always exemplary including participation in both mandatory and voluntary training and corporate activities at the general employee level - also never made light of in the report.

## SUPPORTING DOCUMENTS





## STATE OF ILLINOIS
## DEPARTMENT OF HUMAN RIGHTS

IN THE MATTER OF:        )
                   )
                   )
                   )
     Gabriel J. Othon,      )
                   )    IDHR NO.:  2007CF1015
and                 )    EEOC NO.:  21BA70145
                   )
                   )
                   )
     LG Electronics, Inc.      )

## EXTENSION

Pursuant to 7A-102G (1) of the Human Rights Act, we hereby agree to extend the 365 day time limit for the Department's investigation by <u>120</u> days.


_____      _____
COMPLAINANT (Signature)          RESPONDENT (Signature)*


_____      _____
Complainant's name (Printed)        Respondent's name (printed)


_____      _____
Date                        Respondent's title


                                   _____
                                   Date


EXTENS/CPFORMS
10/05

* Note:     It is assumed that attorneys or non-attorney representatives are signing on behalf of all parties they represent, unless otherwise indicated.  The parties further understand, acknowledge, and agree that this document may be executed in identical counterparts.

*Gabriel Othon*

GABRIEL J. OTHON
244 S. YALE AV
ADDISON, IL 60101
(630)832-7247